No. 18,750.

W. D. BALES, *Appellant*, v. THE WICHITA MIDLAND VALLEY RAILROAD COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. EMINENT DOMAIN—*Unexpired Term of Leasehold—Elements of Damages.* When a leasehold consisting of a room used by the lessee for business purposes is appropriated for railway uses, the increased rental value of the premises caused by the addition by the tenant of decking, floor space, light plant and fixtures, and hook and rug racks, is an element that may be considered by the jury in determining the value of the unexpired term.

2. SAME. Anticipated profits of a furniture business carried on by the lessee upon the premises should not be allowed as an element of damages in the situation shown by the evidence in this case.

3. SAME. In awarding compensation to a lessee for a leasehold appropriated for railway uses, the market value of the unexpired term should be allowed, taking into consideration as elements of value the situation, condition and use made, or that may be made, of the premises, and the nature and prosperity of the business carried on there if it affects the value of the lease.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed July 7, 1914. Modified.

*E. L. Foulke, C. A. Matson,* and *J. D. Wall,* all of Wichita, for the appellant.

*J. D. Houston,* and *C. H. Brooks,* both of Wichita, for the appellee.

The opinion of the court was delivered by

BENSON, J.: An appeal was taken to the district court from an award of damages by commissioners for taking a leasehold of the plaintiff upon a business house for depot grounds. The only question presented here is whether the district court applied the correct measure of damages.

The property held under the lease was occupied by the plaintiff for the sale of new and second-hand furniture. After acquiring the lease he put in extra decking, light plant and fixtures, extra shelving, hooks and rug racks, at an expense of about $200. The lease had eleven months to run at a rental of $45 per month. The court instructed the jury that the measure of damages was the difference between the market value of the lease for the unexpired term and the rent the plaintiff was required to pay, and said:

"In estimating the market value of the lease in question you may take into consideration the desirableness of the location of the premises for this or any other legitimate business, whether the leasehold property was improved for a special purpose for which it was specially suited, whether the business which the plaintiff established thereon and conducted has enhanced the market value of the leasehold property as a site for carrying on such business; but you can not take into consideration any specific or independent damages apart from the lease itself on account of injury to his personal property while being removed, nor that he has been compelled to surrender the rooms for the right of way of the railroad, nor for any damages because of loss of profits or damage to his business or good-will, nor for expense in storing his goods. . . . In estimating the value of the lease you may take into consideration the expense to Bales of moving his stock of goods and fixtures to a new location or damage to the

same resulting from the removal, and the increased value of the premises for rent in consequence of putting in such fixtures and improvements as showing the value of the unexpired portion of the lease, but not as showing a specific claim for damages for the expense of moving his stock of goods and fixtures to a new location or damage to the same resulting from their removal or for putting in such fixtures and improvements. . . . In arriving at the value of the plaintiff's lease, you may take into consideration the fact, if you find it to be a fact, that the building included in this lease had been used for a second-hand and new furniture store for a number of years; and if you find that the buildings had been so used added to the value of the plaintiff's lease, you will take that fact into consideration in arriving at your verdict."

The jury found in answer to a special question that the market value of the lease was made up of the following items:

"Extra decking, floor space, light plant and
  fixtures, extra shelving, hook & rug rack, $120.00
Extra rent, $5.00 per month . . . . . . . . . . . . .    55.00
Ten per cent on net profits . . . . . . . . . . . . .   300.00
                                              _____
                                              $475.00"

and that the rental value of the property was $50 per month.

The rent being $45 per month and the rental value being $50 per month, the difference for eleven months makes up the $55 item.

After hearing testimony which took a wide range, the abstract shows that on motion of the defendant the court said to the jury:

"You will disregard all testimony of the witness showing that his opinion as to the value of this lease was based on the fact that the business was a going concern and that there was a loss of time in moving and that there was a depreciation of the stock in moving and that there was a loss of profits by reason of moving, and you will not consider that testimony at all."

On motion of the defendant the court struck out the items of $120 and $300, allowed by the jury, and rendered judgment for the plaintiff for $55.

When the plaintiff put in the decking, shelves and other conveniences, the value of his unexpired term was that of the property as he received it, plus the added value caused by these additions; that is, the rental value of the property in the condition it was when taken for public use.

The jury were asked to state the elements making up the aggregate value of the lease, and gave as one of these elements the extra decking and other things mentioned. The amount of $120 for these fixtures or additions should, in harmony with the instructions and the question, be interpreted to mean the increase in the value of the unexpired term by attaching them to the property. So understood, no good reason is perceived why the amount should be stricken out. In *Pause v. City of Atlanta*, 98 Ga. 92, 26 S. E. 489, 58 Am. St. Rep. 290, it was held that the cost of improvements and fixtures placed in the building by the lessee which could be removed by him could not be recovered, but that the increased rental value of the premises in consequence of putting them in could be considered in computing damages.

The item of ten per cent on net profits, also contained in the answer to the special question, appears to be based on the testimony of a witness who said that the value of this lease was $45 per month, plus ten per cent of the net profits of the business, for the value of the location for an established business. The plaintiff having testified that his net profits for the preceding year were $3000, the basis of the finding appears. The question is therefore presented, whether, conceding the evidence sufficient upon which to estimate profits, they should be allowed as an element in arriving at the value of the lease.

It was said in *Cobb v. Boston,* 109 Mass. 309:

"The only question was as to the value of his unexpired lease, and not as to the profits of his business or the inconvenience of removing it to some other place."

It was observed in *Becker, Appellant, v. Phila. & Reading R. R.,* 177 Pa. St. 252, 35 Atl. 617:

"We have so often said that the profits of business could not be recovered in condemnation proceedings that it seems like a waste of time to cite the decisions. As far back as *Thoburn's Case,* 7 S. & R. 411, it was held that, in estimating the damages done to the landowner, the jury are to value the injury to the property at the time the injury was suffered, without reference to the person of the owner or the state of his business." (p. 258.)

In *St. L., K. & W. Ry. Co. v. Knapp-Stout & Company,* 160 Mo. 396, 61 S. W. 300, a condemnation case, the court said:

"Injury to business, loss of profits, inconvenience to the owner, damage to personal property or the expense of removing it, are not to be estimated as distinct elements of damages."   (p. 412.)

The rule in New Hampshire, as stated in *Ranlet v. Railroad,* 62 N. H. 561, is:

"The expense of removing the plaintiffs' property from the land taken and from the land of the railroad, the value of the lumber after removal, the amount of the depreciation in value of the coal on account of taking the land, and the annual profits and income of the plaintiffs' business under the lease, were immaterial matters, and the evidence upon these points was properly excluded. The land covered by the plaintiffs' lease was taken by the defendants in the legitimate exercise of the power of eminent domain. The measure of the plaintiffs' damages was the market value of the unexpired lease, and the excluded evidence could furnish no aid in the determination of that question." (p. 564.)

It was held in Washington that the same general rule applies to leases as in other cases.

"In other words, the amount of diminution in value of their lease because of the appropriation." (*Seattle, etc., Ry. Co. v. Scheike,* 3 Wash. 625, 628, 29 Pac. 217.)

In *In re Petition of New York & Brooklyn Bridge,* 4 N. Y. Supp. 222, it was said by the supreme court of New York in a case of condemnation of a leasehold:

"The measure of damages in cases of this character is well settled to be the value of the unexpired term of the lease, less the rent reserved. The tenant is not entitled to be awarded damages caused by the necessity of removal of personal property, nor consequential damages arising from interruption of business."

The rule in Massachusetts is further stated in *New York, &c. Railroad v. Blacker,* 178 Mass. 386, 59 N. E. 1020, where *Patterson v. Boston,* 40 Mass. (23 Pick.) 425, cited by the plaintiff, and other earlier Massachusetts cases are distinguished.

It will be observed that the instructions in this case are in harmony with the views of the Massachusetts court. Other citations to the same effect might be given.

The ordinary rule of damages for the appropriation of land for public uses (railroad purposes)' is the difference in market value before the appropriation and immediately thereafter. (*W. & W. Rld. Co. v. Kuhn,* 38 Kan. 104, 16 Pac. 75; *McKnight v. Wichita,* 83 Kan. 7, 109 Pac. 994.) All circumstances naturally affecting this value are open to consideration. (*Railroad Co. v. Schmuck,* 69 Kan. 272, 276, 76 Pac. 836.) Every legitimate use to which it may be applied may be considered. (*Railway Co. v. Weidenmann,* 77 Kan. 300, 94 Pac. 146.) Rental and use may be shown as tending to prove value. (*Kelchner v. Kansas City,* 86 Kan. 762, 121 Pac. 915.) Although the interest taken in this case is only a leasehold, and the whole is taken, the same rule applies, viz., the market value of the thing taken. In arriving at this the market value of the unexpired term should be allowed. In awarding compensation to a lessee for a leasehold appropriated

for railway uses the market value of the unexpired
term should be allowed, taking into consideration as
elements of value the situation, condition and use
made, or that may be made, of the premises, and the
nature and prosperity of the business carried on there
if it affects the value of the lease. In Massachusetts
where a greenhouse property was taken, it was said:

"The evidence of the value of the plants, flowers,
and potted soil of the petitioner on the premises, and
of the amount of business done by him, was admitted
only for a single purpose, and was carefully limited in
the instructions to the jury. The jury were told that
no damage could be allowed for the good will, or for
injury to the business or to the plants or flowers, and
that this evidence was admitted only as bearing upon
the question of the capacity of the real estate for
use." (*Pegler v. Hyde Park*, 176 Mass. 101, 102, 57
N. E. 327.)

It will be noticed that an opinion of a witness was
given that ten per cent of the net profits of the past
year's business entered into and augmented the value
of the lease to that amount for the next year. This
is a precarious foundation for a verdict in any event.
Anticipated profits as an element of damages are only
allowed where reasonably certain; when speculative,
remote and contingent they are excluded. (*Railway
Co. v. Thomas*, 70 Kan. 409, 78 Pac. 861.) While it
may be that the profits of the business were suscep-
tible of proof, the part of such profits attributable to
the continuance of the lease seems to be a matter of
conjecture.

The instructions allowed the jury to consider the
desirableness of the location and the enhancement of
value of the lease by the business he had conducted
there in determining the value of the lease. Incidental
to these considerations was the fact that the plaintiff
had made profits in the business. Thus he secured
the benefit of these considerations so far as they
affected the value of the lease, and this, as we are con-

strained to hold upon the facts of this case, secured his substantial rights.

It has been held in Michigan that profits of a business carried on on the property, when reasonably certain, may be allowed as an element of damage for its appropriation for public use. (*Commissioners of Parks v. Moesta,* 91 Mich. 149, 51 N. W. 903.) The same rule was adopted, as we have seen, at an early day in Massachusetts, but is departed from in later cases. The general rule that damages are measured by diminution in value prevails in Illinois, but it has been held there that in exceptional cases damages to personal property, cost of removal and interruption of business may also be allowed. (*Braun v. Met. West Side El. R. R. Co.,* 166 Ill. 434, 46 N. E. 974.) It is held in Oklahoma that the expense of the necessary removal of lumber from the land taken may be included as an element of damages. (*Blincoe v. C. O. & W. Ry. Co.,* 16 Okla. 286, 83 Pac. 903.) In a note following the report of the Blincoe case, in 4 L. R. A., n. s., 890, Massachusetts, New York, Pennsylvania and New Hampshire cases are cited as holding to the contrary, also a Pennsylvania case holding, in circumstances there stated, that expenses of removal of property might be allowed.

It will be noticed that the jury were instructed that the cost of removal of the goods and fixtures might be considered in determining the value of the unexpired portion of the lease. Whether such an element should be considered or not the plaintiff can not complain of the instruction for it is in his favor.

Instructions asked by the plaintiff fairly presented his claim to recover the separate items of damage already considered.

It is concluded that the $120 item allowed by the jury was erroneously stricken out and should be restored. The action of the court in striking out the $300 item for profits is sustained.

The cause is remanded with directions to modify the judgment accordingly.